UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

DONALD LEE SWACKHAMMER,

               Plaintiff,               Case No. 1:10-cv-1160

v.                                              Honorable Robert J. Jonker

MICHIGAN DEPARTMENT OF
CORRECTIONS et al.,

               Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint against Defendants Michigan Department of Corrections, Berghuis, Smith and Fager. The Court also will dismiss Plaintiff's First Amendment access-to-the-courts, Fifth, Sixth and Fourteenth Amendment claims. The Court will serve Plaintiff's First Amendment retaliation claim against Defendants Plighta, Walton, Riley and Bush.

**Factual Allegations**

Plaintiff currently is incarcerated in the Richard A. Handlon Correctional Facility, but the events giving rise to his complaint occurred at the E.C. Brooks Correctional Facility (LRF). In his *pro se* complaint, Plaintiff sues the Michigan Department of Corrections (MDOC) and the following LRF employees in their official and personal capacities: Warden Mary Berghuis, Deputy Warden Rick Smith, Litigation Coordinator (unknown) Fager, Sergeant (unknown) Plighta, Inspector (unknown) Walton, Captain (unknown) Riley, Corrections Officer (unknown) Bush and "Three unknown Green-Tag Correctional Officers."

Plaintiff was appointed legal counsel in a previous civil rights action in this Court. *See Swackhammer v. Martin et al.*, No. 4:03-cv-82 (W.D. Mich.). On or about February 12, 2009, Plaintiff submitted a request to have his lawyers, Brett Rendiero and Timothy Monsma, added to his phone list so that he could communicate with them regarding his upcoming trial. A few days later, Defendant Plighta returned the form to Plaintiff with a notation that it was not the designated time for adding phone numbers. Plaintiff expressed concern to Plighta about not being able to contact his attorneys. While Plaintiff indicated on the request that Rendiero and Monsma were lawyers. Plighta responded that he did not know the numbers were for lawyers and told Plaintiff to submit another request. A week later, the request again was returned to Plaintiff because it was not the proper time. Plaintiff then submitted a third form and a kite explaining that he needed to communicate with his lawyers in order to prepare for his civil trial. A week after his third request, Rendiero's phone number was added to his telephone list, but Monsma's number was not added to the list because Plighta did not believe that he was a lawyer. Plaintiff submitted a fourth request with

regard to Monsma that included his State of Michigan attorney number and his place of employment, but he never was added to Plaintiff's phone list.

Plaintiff alleges that attorneys Rendiero and Monsma came to visit him at the prison on February 6, 2009, three days before the trial was scheduled to begin. After waiting in the visiting room for two hours, Plaintiff inquired with Lieutenant Westerlund about the delay in processing the visit. After speaking with staff in the control center, Westerlund told Plaintiff that the attorney visiting rooms were full, but staff should have processed the visit in the regular visiting room. A few minutes later, Plaintiff's visit with Rendiero and Monsma was processed. The attorneys had various documents they wanted Plaintiff to review before trial, so they asked the corrections officer in the visiting room how Plaintiff could take possession of the documents. The officer made several phone calls and received directions from Defendant Riley for the lawyers to leave the documents with Defendant Bush at the front desk. Riley indicated that he would search the documents himself and ensure that they were delivered to Plaintiff later that night. According to Plaintiff, the lawyers left the documents with Defendants Bush and the Green Tag Officers as directed by Riley. Plaintiff, however, never received the documents. Defendant Riley told Plaintiff that when he went to the front desk to retrieve the documents, they could not be located.

After making numerous attempts to find the documents, Plaintiff filed a grievance on March 18, 2009. When Defendant Walton interviewed Plaintiff regarding his grievance, she claimed that his attorneys never left documents at the front desk and threatened to write a misconduct against him for making false allegations against prison staff. Walton further stated that she would "have [his] ass sent back up north when [she] proves the accusations [Plaintiff] made were false, and do [her] best to make sure [Plaintiff] never made it back down state, unless that is, if you are willing

to sign-off from this grievance." (Compl., Page ID #9.) Plaintiff attempted to explain to Walton that his allegations were not false and invited her to call the attorneys for verification. Plaintiff also told Walton that he should not be retaliated against for filing a legitimate lawsuit against corrections officers. Plaintiff left Walton's office without signing off on the grievance. Plaintiff filed his second step grievance appeal on April 17, 2009. Plaintiff was transferred to another facility approximately a month later. He claims that he was transferred in retaliation for filing a grievance and writing letters about the missing legal documents.

Plaintiff asserts violations of his First, Fifth, Sixth, and Fourteenth Amendment rights. Plaintiff seeks declaratory and injunctive relief, as well as monetary damages.

### **Discussion**

I.     Sovereign Immunity

As an initial matter, Plaintiff may not maintain a Section 1983 action against the MDOC. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous unpublished opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment. *See, e.g.*, *McCoy v. Michigan*, No. 08-1541, 2010 WL 841198, at *7 (6th Cir. Mar. 12, 2010);

*Turnboe v. Stegall*, No. 00-1182, 2000 WL1679478, at *2 (6th Cir. Nov. 1, 2000). In addition, the State of Michigan (acting through the Michigan Department of Corrections) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)). Therefore, the MDOC must be dismissed from this action.

II.  <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, ___ F.3d ___, 2010 WL 5288892, at *2 (6th Cir. Dec. 28, 2010) (holding

that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. **Defendants Berghuis, Smith and Fager**

Plaintiff does not make any specific factual allegations against Defendants Berghuis, Smith and Fager in the body of his complaint. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, Plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing Plaintiff's claims where complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 200 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the

complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries").

Moreover, Plaintiff may not maintain an action against Defendants for the conduct of their subordinates. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 129 S. at 1948; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 129 S. Ct. at 1948. Plaintiff has failed to allege that Defendants Berghuis, Smith or Fager engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

  B. **Defendants Plighta, Walton, Riley, Bush and Unknown Green-Tag Correctional Officers**

    1. *Sixth Amendment Right to Counsel*

Plaintiff claims that Defendants violated his Sixth Amendment right to counsel when they impeded his ability to communicate with attorneys on the phone and disposed of the legal

documents left by his attorneys in preparation for trial. The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. However, the Sixth Amendment right to counsel in criminal matters does not extend to civil matters. *See Shepherd v. Wellman*, 313 F.3d 963, 970 (6th Cir. 2002); *Glover v. Johnson*, 75 F.3d 264, 268 (6th Cir. 1996); *Adams v. Vidor*, 12 F. App'x 317, 319 (6th Cir. 2001). Because counsel was appointed to represent Plaintiff in a civil action, he cannot raise a Sixth Amendment claim.

2. *Procedural Due Process*

Plaintiff also raises Fifth and Fourteenth Amendment procedural due process claims arising from Defendants' conduct. In order to establish a procedural due process violation, a plaintiff must prove that (1) he was deprived of a protected liberty or property interest, and (2) such deprivation occurred without the requisite due process of law. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 296 (6th Cir. 2006); *see also Swihart v. Wilkinson,* 209 F. App'x 456, 458 (6th Cir. 2006).

To the extent Plaintiff claims that Defendants Riley, Bush and the Green Tag Officers maliciously destroyed his legal property in violation of his procedural due process rights, his claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done under

an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized negligent acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. MICH. DEP'T OF CORR., Policy Directive 04.07.112, ¶ B (effective Nov. 15, 2004). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. MICH. COMP. LAWS § 600.6419; Policy Directive, 04.07.112, ¶ B. Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies." MICH. COMP. LAWS § 600.6419(1)(a). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property. Accordingly, Plaintiff's complaint will be dismissed.

      3.    *Access to the Courts*

Plaintiff alleges that by interfering with his ability to communicate with his lawyers and destroying his legal documents, Defendants violated his right of access to the courts. It is clearly

established that prisoners have a constitutionally protected right of access to the courts under the First and Fourteenth Amendments. *See Lewis v. Casey*, 518 U.S. 343, 354 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Prison officials have a two-fold duty to protect a prisoner's right of access to the courts. *McFarland v. Luttrell*, No. 94-6231, 1995 WL 150511, at *3 (6th Cir. Apr. 5, 1995). First, they must provide affirmative assistance in the preparation of legal papers in cases involving constitutional rights, in particular criminal and habeas corpus cases, as well as other civil rights actions relating to the prisoner's incarceration. *Id.* (*citing Bounds*, 430 U.S. at 824-28). Second, the right of access to the courts prohibits prison officials from erecting any barriers that may impede the inmate's accessibility to the courts. *Id.* (*citing Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992)). In order to state a viable claim for interference with his access to the courts, a plaintiff must show actual injury to pending or contemplated litigation. *See Lewis*, 518 U.S. at 349; *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000.

In this case, Plaintiff does not make any allegations whatsoever that he suffered any injury resulting from Defendants' interference. According to the docket record in *Swackhammer v. Martin et al.*, No. 4:03-cv-82 (W.D. Mich.), a trial was held in that case on February 9 and 10, 2009, which ended in a mistrial on February 11, 2009. A second trial was scheduled, but the parties settled and entered into a stipulation to dismiss the case with prejudice on March 12, 2009. Plaintiff does not assert that the proceedings in that case or the outcome were affected in any way by Defendants' alleged conduct. Plaintiff, therefore, fails to state a claim for denial of access to the courts.

4. *First Amendment Retaliation*

Plaintiff alleges that Defendants impeded his ability to communicate with his lawyers and destroyed his legal documents in retaliation for filing a civil action against corrections officers. He further claims that he was transferred in retaliation for filing a grievance about the missing legal documents. At this stage of the proceedings, the Court finds that Plaintiff's allegations are sufficient to state retaliation claims against Defendants Plighta, Walton, Riley, Bush and Unknown Green-Tag Correctional Officers. However, the Court currently lacks sufficient information to serve the complaint against the Unknown Green-Tag Correctional Officers.

## **Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Defendants MDOC, Berghuis, Smith and Fager will be dismissed under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). In addition, Plaintiff's First Amendment access-to-the-courts, Fifth, Sixth and Fourteenth Amendment claims will be dismissed with prejudice. The Court will order service of Plaintiff's First Amendment retaliation claims against Defendants Plighta, Walton, Riley and Bush.

An Order consistent with this Opinion will be entered.


Dated:   January 19, 2011            /s/ Robert J. Jonker
                                                                 ROBERT J. JONKER
                                                                 UNITED STATES DISTRICT JUDGE