UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONALD LEE SWACKHAMMER,

        Plaintiff,

vs.

MICHIGAN DEPARTMENT OF
CORRECTIONS, *et al.*,

        Defendants.

                                   /

Case No. 1:10-cv-1160

Hon. Robert J. Jonker

### REPORT AND RECOMMENDATION

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is now before the court on a motion for summary judgment filed by defendants James Pilchta, Sherry Walton, Gregory Riley and Joyce Bush (docket no. 22).

        **I.**    **Background**

        Plaintiff filed a 133-paragraph complaint naming eight defendants, with allegations against three additional "unknown" defendants. Compl. (docket no. 1). The court previously summarized plaintiff's allegations as follows:

>         Plaintiff currently is incarcerated in the Richard A. Handlon Correctional Facility, but the events giving rise to his complaint occurred at the E.C. Brooks Correctional Facility (LRF). In his pro se complaint, Plaintiff sues the Michigan Department of Corrections (MDOC) and the following LRF employees in their official and personal capacities: Warden Mary Berghuis, Deputy Warden Rick Smith, Litigation Coordinator (unknown) Fager, Sergeant (unknown) Plighta [Pilchta], Inspector (unknown) Walton, Captain (unknown) Riley, Corrections Officer (unknown) Bush and "Three unknown Green-Tag Correctional Officers."
>
>         Plaintiff was appointed legal counsel in a previous civil rights action in this Court. *See Swackhammer v. Martin et al.*, No. 4:03-cv-82 (W.D. Mich.). On or about February 12, 2009, Plaintiff submitted a request to have his lawyers, Brett Rendiero and Timothy Monsma, added to his phone list so that he could

communicate with them regarding his upcoming trial. A few days later, Defendant Plighta returned the form to Plaintiff with a notation that it was not the designated time for adding phone numbers. Plaintiff expressed concern to Plighta about not being able to contact his attorneys. While Plaintiff indicated on the request that Rendiero and Monsma were lawyers, Plighta responded that he did not know the numbers were for lawyers and told Plaintiff to submit another request. A week later, the request again was returned to Plaintiff because it was not the proper time. Plaintiff then submitted a third form and a kite explaining that he needed to communicate with his lawyers in order to prepare for his civil trial. A week after his third request, Rendiero's phone number was added to his telephone list, but Monsma's number was not added to the list because Plighta did not believe that he was a lawyer. Plaintiff submitted a fourth request with regard to Monsma that included his State of Michigan attorney number and his place of employment, but he never was added to Plaintiff's phone list.

Plaintiff alleges that attorneys Rendiero and Monsma came to visit him at the prison on February 6, 2009, three days before the trial was scheduled to begin. After waiting in the visiting room for two hours, Plaintiff inquired with Lieutenant Westerlund about the delay in processing the visit. After speaking with staff in the control center, Westerlund told Plaintiff that the attorney visiting rooms were full, but staff should have processed the visit in the regular visiting room. A few minutes later, Plaintiff's visit with Rendiero and Monsma was processed. The attorneys had various documents they wanted Plaintiff to review before trial, so they asked the corrections officer in the visiting room how Plaintiff could take possession of the documents. The officer made several phone calls and received directions from Defendant Riley for the lawyers to leave the documents with Defendant Bush at the front desk. Riley indicated that he would search the documents himself and ensure that they were delivered to Plaintiff later that night. According to Plaintiff, the lawyers left the documents with Defendants Bush and the Green Tag Officers as directed by Riley. Plaintiff, however, never received the documents. Defendant Riley told Plaintiff that when he went to the front desk to retrieve the documents, they could not be located.

After making numerous attempts to find the documents, Plaintiff filed a grievance on March 18, 2009. When Defendant Walton interviewed Plaintiff regarding his grievance, she claimed that his attorneys never left documents at the front desk and threatened to write a misconduct against him for making false allegations against prison staff. Walton further stated that she would "have [his] ass sent back up north when [she] proves the accusations [Plaintiff] made were false, and do [her] best to make sure [Plaintiff] never made it back down state, unless that is, if you are willing to sign-off from this grievance." (Compl., Page ID #9.) Plaintiff attempted to explain to Walton that his allegations were not false and invited her to call the attorneys for verification. Plaintiff also told Walton that he should not be retaliated against for filing a legitimate lawsuit against corrections officers. Plaintiff

> left Walton's office without signing off on the grievance. Plaintiff filed his second step grievance appeal on April 17, 2009. Plaintiff was transferred to another facility approximately a month later. He claims that he was transferred in retaliation for filing a grievance and writing letters about the missing legal documents.
>
> Plaintiff asserts violations of his First, Fifth, Sixth, and Fourteenth Amendment rights. Plaintiff seeks declaratory and injunctive relief, as well as monetary damages.

Opinion at pp. 2-4 (docket no. 7).

The court dismissed all of plaintiff's claims except for his First Amendment retaliation claims against Sergeant Plighta [Pilchta], Inspector Walton, Captain Riley, Corrections Officer Bush and the three unknown officers:

> Plaintiff alleges that Defendants impeded his ability to communicate with his lawyers and destroyed his legal documents in retaliation for filing a civil action against corrections officers. He further claims that he was transferred in retaliation for filing a grievance about the missing legal documents. At this stage of the proceedings, the Court finds that Plaintiff's allegations are sufficient to state retaliation claims against Defendants Plighta, Walton, Riley, Bush and Unknown Green-Tag Correctional Officers. However, the Court currently lacks sufficient information to serve the complaint against the Unknown Green-Tag Correctional Officers.

*Id.* at p. 11. Plaintiff has not yet identified the three "unknown" officers and they have not been served.

## II.     Defendants' motion for summary judgment

### A.     Legal Standard

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws

3

of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983. Here, plaintiff's § 1983 claim arises from an alleged retaliation in violation of the First Amendment.

Defendants seek summary judgment on this claim. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by":

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell

two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### B. Failure to exhaust

#### 1. Exhaustion requirement

The PLRA, 42 U.S.C. § 1997e, provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

#### 2. MDOC grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective July 9, 2007). A prisoner must first attempt to resolve a

5

problem with the staff member within two business days of becoming aware of the giveable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ P and R. The Policy Directive provides the following directions for completing grievance forms:

> The issues shall be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ R (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ V. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ BB. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ FF.

### 3. Plaintiff failed to properly exhaust a grievance against Inspector Walton and Captain Riley.

Defendants have identified one grievance which relates to plaintiff's claim, LRF 09-03-00521-25A ("521"). *See* Grievance 521 (docket no. 1-2). Plaintiff attached a copy of this grievance to his complaint and does not dispute that this is the grievance upon which his federal action is based.[1] Grievance 521 is dated March 18, 2009, and refers to an incident that occurred on March 14, 2009. *Id.* The grievance named former defendants Berghuis, Smith, and Fager, and two

---

[1] The copy of this grievance attached to defendants' brief is of poor quality and illegible. For purposes of this report, the court will refer to the legible copy of the grievance attached to plaintiff's complaint.

6

of the remaining defendants, Sergeant Pilchta [referred to as "Plighta"] and Corrections Officer Bush. *Id.* Plaintiff then presents a "catch-all" provision in his grievance, purporting to grieve:

> [A]ll other LRF staff that are unidentifiable due to grievant's inability to access files. Grievant attempted to resolve this issue with written correspondence to the warden and litigation coordinator with no resolution.

*Id.* The grievance does not name either Inspector Walton or Captain Riley. While plaintiff purported to grieve unnamed members of "LRF staff," the MDOC's Policy Directives do not allow prisoners to file grievances against unidentified parties. *See* Policy Directive 03.02.130 at ¶ R. In any event, Inspector Walton and Captain Riley were not unknown to plaintiff. Plaintiff spoke to Riley prior to the grievance being filed, when Riley told plaintiff he had not found the missing documents at the front desk. As far a Walton is concerned, the offending interview with her did not even occur until after the grievance in question was filed (see discussion regarding exhaustion of retaliatory transfer claim, *infra*), so it is apparent she was not one of the unknowns in the earlier grievance. Viewing the evidence in the light most favorable to plaintiff, the record reflects that he failed to properly exhaust a grievance against either Inspector Walton or Captain Riley. *See Jones*, 549 U.S. at 218; *Woodford*, 548 U.S. at 90-91. Accordingly, Inspector Walton and Captain Riley are entitled to summary judgment on grounds of lack of exhaustion.

     **4.**  **Plaintiff failed to properly exhaust a grievance for retaliation**

       **a.**  **Plaintiff's claim of retaliatory transfer**

Grievance 521 refers to four incidents: the missing court documents that plaintiff's attorneys left with prison staff; defendants' denial of telephone calls from plaintiff's attorneys; plaintiff's "prolonged wait" to see his attorneys on or about February 6, 2009; and defendants' "rejection" of the attorneys' telephone numbers submitted for plaintiff's telephone list. *See*

Grievance 521 (docket no. 1-2). As defendants point out, this grievance does not address plaintiff's claim of retaliatory transfer. Indeed, this grievance, dated March 18, 2009, could not have grieved the alleged retaliatory transfer, because according to his complaint, plaintiff was transferred sometime after May 15, 2009 - approximately two months *after* filing the grievance. See Compl. at ¶¶ 73-75. Viewing the evidence in the light most favorable to plaintiff, the record reflects that he failed to properly exhaust a grievance with respect to the alleged retaliatory transfer. *See Jones*, 549 U.S. at 218; *Woodford*, 548 U.S. at 90-91. Accordingly, defendants are entitled to summary judgment on plaintiff's claim of retaliatory transfer on grounds of lack of exhaustion.

### b. Plaintiff's claim of retaliation

Defendants point out that Grievance 521 does not raise a claim of retaliation. The Court agrees. The issue raised in Grievance 521 related to defendants' alleged violation of plaintiff's constitutional right to access the courts:

> Grievant offers the following information to show LRF staff frustrated, impeded, hindered, interfered, and obstructed access to the federal court and attorney's involvement in a case against MDOC staff in violation of federal law; state [law]; and MDOC Policy and Procedures. The following scenario, collectively, shows an abusive pattern caused deliberately [illegible] cannot be ignored. . . The missing documents, denied [telephone] calls, prolonged wait for visitation, and rejection of numerous telephone list [sic] of attorney telephone numbers [submitted] for approval, leaves the distinct impression all above cited was done intentionally. Additional information [missing word] be provided at steep one investigation/review.

Grievance 521. The court dismissed plaintiff's access to the court claim on initial screening. While plaintiff now claims that defendants performed these alleged wrongful actions in retaliation for plaintiff's previous filing of a federal lawsuit (i.e., *Swackhammer v. Martin et al.*, No. 4:03-cv-82 (W.D. Mich.)), he did not raise this issue in Grievance 521. In summary, plaintiff's grievance did not address the retaliation claims asserted by plaintiff in the present action. Viewing the evidence

in the light most favorable to plaintiff, the record reflects that he failed to properly exhaust a grievance with respect to the alleged retaliation. *See Jones*, 549 U.S. at 218; *Woodford*, 548 U.S. at 90-91. Defendants are entitled to summary judgment on that claim on grounds of lack of exhaustion.

### III. The three unidentified corrections officers

Plaintiff has failed to identify or serve the three unknown defendants (referred to as the "Green-Tag Correctional Officers") who allegedly received the legal documents from his attorneys. Under the circumstances of this case, these unidentified and unserved defendants should be granted summary judgment. "Summary judgment may be properly entered in favor of unserved defendants where (1) the controlling issues would be the same as to the unserved defendants, (2) those issues have been briefed, and (3) [p]laintiff has been provided an opportunity to address the controlling issues." *Moore v. Thomas*, 653 F.Supp.2d 984, 1003 (N.D. Cal. 2009). "[N]o principle forbids a court to notice that [] a defense exists, is bound to be raised, and is certain to succeed when raised." *Buckley v. Fitzsimmons*, 20 F.3d 789, 793 (7th Cir.1994). *See Laubach v. Scibana*, No. CIV-05-1294-F, 2008 WL 281545 at *12 (W.D. Okla. Jan. 31, 2008) (meritorious affirmative defenses asserted by defendants were "equally applicable to the claims against the unresponsive and unserved defendants" and formed the basis to dismiss the unserved defendants pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)); *Blake v. McCormick*, No. 5:06-cv-273, 2007 WL 1671732 at *5 (E.D. Tex. June 8, 2007) (a successful affirmative defense of lack of exhaustion raised by defendants served in a prisoner civil rights case "inures to the benefit of any unserved or defaulting defendants"); *Day v. Office of Cook County Sheriff*, No. 2000 C 2529, 2001 WL 561362 at *3 (N.D. Ill. May 21, 2001) (defendant's meritorious defense of qualified immunity applied to other "yet-unserved defendants"

who could raise the same defense). *Cf. Lewis v. Lynn*, 236 F.3d 766, 768 (5th Cir. 2001) ("[s]everal courts have held that where 'a defending party establishes that plaintiff has no cause of action . . . this defense generally inures also to the benefit of a defaulting defendant'") ( quoting *United States v. Peerless Insurance Company*, 374 F.2d 942, 945 (4th Cir. 1967).

Defendants Pilchta, Walton, Riley and Bush have established that plaintiff did not properly exhaust his retaliation claim. This defense inures to the benefit of the three unidentified and unserved defendants who allegedly took part in the alleged acts of retaliation. Accordingly, the court should grant summary judgment in favor of the three unknown corrections officers for lack of exhaustion.[2]

### IV. Recommendation

For the reasons set forth above, I respectfully recommend that the motion for summary judgment filed by defendants Pilchta, Walton, Riley and Bush (docket no. 22) be **GRANTED** for failure to exhaust administrative remedies.

I further recommend that the three unserved and unknown defendants referred to as the "Green-Tag Correctional Officers" be **GRANTED** summary judgment on the same grounds.

I further recommend that this action be **DISMISSED**.

Dated:  February 8, 2012                                /s/ Hugh W. Brenneman, Jr.
                                                        HUGH W. BRENNEMAN, JR.
                                                        United States Magistrate Judge

---

[2] Furthermore, the court notes that plaintiff could not have properly exhausted Grievance 521 against the three unknown defendants because they were not named in the grievance.

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).