UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONALD LEE SWACKHAMMER,

      Plaintiff,

vs.

MICHIGAN DEPARTMENT OF
CORRECTIONS, *et al.*,

      Defendants.
      _____/

Case No. 1:10-cv-1160

Hon. Robert J. Jonker

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is now before the court on a motion for summary judgment filed by defendants Joyce Bush and James Plichta (docket no. 49).

**I.**    **Background**

Plaintiff filed a 133-paragraph complaint naming eight defendants, with allegations against three additional "unknown" defendants. Compl. (docket no. 1). The court previously summarized plaintiff's allegations as follows:

> Plaintiff currently is incarcerated in the Richard A. Handlon Correctional Facility, but the events giving rise to his complaint occurred at the E.C. Brooks Correctional Facility (LRF). In his pro se complaint, Plaintiff sues the Michigan Department of Corrections (MDOC) and the following LRF employees in their official and personal capacities: Warden Mary Berghuis, Deputy Warden Rick Smith, Litigation Coordinator (unknown) Fager, Sergeant (unknown) Plighta [Pilchta], Inspector (unknown) Walton, Captain (unknown) Riley, Corrections Officer (unknown) Bush and "Three unknown Green-Tag Correctional Officers."
>
> Plaintiff was appointed legal counsel in a previous civil rights action in this Court. *See Swackhammer v. Martin et al.*, No. 4:03-cv-82 (W.D. Mich.). On or about February 12, 2009, Plaintiff submitted a request to have his lawyers, Brett Rendiero and Timothy Monsma, added to his phone list so that he could

communicate with them regarding his upcoming trial. A few days later, Defendant Plighta returned the form to Plaintiff with a notation that it was not the designated time for adding phone numbers. Plaintiff expressed concern to Plighta about not being able to contact his attorneys. While Plaintiff indicated on the request that Rendiero and Monsma were lawyers, Plighta responded that he did not know the numbers were for lawyers and told Plaintiff to submit another request. A week later, the request again was returned to Plaintiff because it was not the proper time. Plaintiff then submitted a third form and a kite explaining that he needed to communicate with his lawyers in order to prepare for his civil trial. A week after his third request, Rendiero's phone number was added to his telephone list, but Monsma's number was not added to the list because Plighta did not believe that he was a lawyer. Plaintiff submitted a fourth request with regard to Monsma that included his State of Michigan attorney number and his place of employment, but he never was added to Plaintiff's phone list.

Plaintiff alleges that attorneys Rendiero and Monsma came to visit him at the prison on February 6, 2009, three days before the trial was scheduled to begin. After waiting in the visiting room for two hours, Plaintiff inquired with Lieutenant Westerlund about the delay in processing the visit. After speaking with staff in the control center, Westerlund told Plaintiff that the attorney visiting rooms were full, but staff should have processed the visit in the regular visiting room. A few minutes later, Plaintiff's visit with Rendiero and Monsma was processed. The attorneys had various documents they wanted Plaintiff to review before trial, so they asked the corrections officer in the visiting room how Plaintiff could take possession of the documents. The officer made several phone calls and received directions from Defendant Riley for the lawyers to leave the documents with Defendant Bush at the front desk. Riley indicated that he would search the documents himself and ensure that they were delivered to Plaintiff later that night. According to Plaintiff, the lawyers left the documents with Defendants Bush and the Green Tag Officers as directed by Riley. Plaintiff, however, never received the documents. Defendant Riley told Plaintiff that when he went to the front desk to retrieve the documents, they could not be located.

After making numerous attempts to find the documents, Plaintiff filed a grievance on March 18, 2009. When Defendant Walton interviewed Plaintiff regarding his grievance, she claimed that his attorneys never left documents at the front desk and threatened to write a misconduct against him for making false allegations against prison staff. Walton further stated that she would "have [his] ass sent back up north when [she] proves the accusations [Plaintiff] made were false, and do [her] best to make sure [Plaintiff] never made it back down state, unless that is, if you are willing to sign-off from this grievance." (Compl., Page ID #9.) Plaintiff attempted to explain to Walton that his allegations were not false and invited her to call the attorneys for verification. Plaintiff also told Walton that he should not be retaliated against for filing a legitimate lawsuit against corrections officers. Plaintiff

2

left Walton's office without signing off on the grievance. Plaintiff filed his second step grievance appeal on April 17, 2009. Plaintiff was transferred to another facility approximately a month later. He claims that he was transferred in retaliation for filing a grievance and writing letters about the missing legal documents.

Plaintiff asserts violations of his First, Fifth, Sixth, and Fourteenth Amendment rights. Plaintiff seeks declaratory and injunctive relief, as well as monetary damages.

Opinion at pp. 2-4 (docket no. 7).

The court dismissed all of plaintiff's claims except for his First Amendment retaliation claims against Sergeant Plichta, Inspector Walton, Captain Riley, Corrections Officer Bush and the three unknown officers:

Plaintiff alleges that Defendants impeded his ability to communicate with his lawyers and destroyed his legal documents in retaliation for filing a civil action against corrections officers. He further claims that he was transferred in retaliation for filing a grievance about the missing legal documents. At this stage of the proceedings, the Court finds that Plaintiff's allegations are sufficient to state retaliation claims against Defendants Plighta, Walton, Riley, Bush and Unknown Green-Tag Correctional Officers. However, the Court currently lacks sufficient information to serve the complaint against the Unknown Green-Tag Correctional Officers.

*Id.* at p. 11. The court subsequently dismissed defendants Walton and Riley. *See* Order (docket no. 37. Plaintiff and the remaining defendants have had an opportunity to engage in pre-trial discovery. *See* Case Management Order (docket no. 44). More recently, plaintiff has identified the three unknown defendants as Corrections Officers J. Kinsey, Ferguson and L. (Devries) Matthews.[1]

    **II.    Defendants' motion for summary judgment**

    **A.    Legal Standard**

---

[1] Defendants Kinsey and Ferguson have filed answers. *See* Answers (docket nos. 59 and 60). Defendant Matthews' answer is not yet due. *See* Waiver of Service (docket no. 58).

3

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983. Here, plaintiff's § 1983 claim arises from an alleged retaliation in violation of the First Amendment.

Defendants seek summary judgment on this claim. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by":

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support

4

plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### B. Plaintiff's "verified" complaint

To create a genuine issue of fact for purposes of a motion for summary judgment, a party's affidavit or declaration must be based upon personal knowledge . *See* Fed. Rules Civ. Proc. 56(c)(4) ("[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declaration is competent to testify on the matters stated"). For purposes of responding to a motion for summary judgment, a verified complaint has the same force and effect as an affidavit. *See Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993). Here, plaintiff attempted to create a verified complaint as allowed under 28 U.S.C. § 1746 by including a "verification" on the last page of the pleading. Section 1746 provides in pertinent part that:

> Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn

declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form: . . .

(2) If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)".

28 U.S.C. § 1746.

Plaintiff, however, did not follow the prescribed form. Rather, plaintiff created his own declaration stating:

I, Donald Lee Swackhammer, pro se Plaintiff in this Verified § 1983 Civil Rights Complaint, do declare under penalty of perjury pursuant to Title 18, United States Code, § 1621, and Title 28, United States Code § 1746, that the foregoing is true and correct to the best of my knowledge, information, and belief.

Compl. at p. 24.

Plaintiff's self-styled declaration did not certify that his statements contained in the complaint were "true and correct." Rather, he diluted the statutory language by stating that his statements were true "to the best of my knowledge, information, and belief." Because plaintiff did not differentiate between allegations based upon his personal knowledge and allegations based upon his information and belief, the complaint is not verified under 28 U.S.C. § 1746. *See Tenneco Automotive Operating Company, Inc. v. Kingdom Auto Parts*, 410 Fed. Appx. 841, 848 (6th Cir. 2010) (trial court could refuse to consider witness' declarations that did not specify which statements were made under information and belief and which were made from personal knowledge).[2] Accordingly, the court will not consider the allegations in plaintiff's complaint as having the same

---

[2] The court notes that 18 U.S.C. § 1621 defines the crime of perjury to include a declaration made under § 1746 which the declarant "does not believe to be true." *See* 18 U.S.C. § 1621(2).

force and effect as a properly executed affidavit in response to defendants' motion for summary judgment.

### C. Plaintiff's Retaliation claim

To prove a First Amendment retaliation claim, a plaintiff must establish three elements: "1) the plaintiff engaged in activities protected by the Constitution or statute; 2) the defendant took an adverse action that would deter a person of ordinary firmness from continuing to engage in that conduct; and 3) that this adverse action was taken at least in part because of the exercise of the protected conduct." *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001). *See also Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). To establish the causation element of a retaliation claim, "the plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct." *Smith*, 250 F. 3d at 1037, *citing Mount Health City School District Board of Education v. Doyle*, 429 U.S. 274, 287 (1977). "[B]ecause prisoner retaliation claims are easily fabricated, and accordingly pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration, we are careful to require non-conclusory allegations." *Bennett v. Goord*, 343 F.3d 133, 137 (2nd Cir. 2003) (internal quotation marks omitted).

#### 1. Corrections Officer Bush

The court concludes that plaintiff cannot establish a retaliation claim against Corrections Officer (CO) Bush because there is no evidence that Bush possessed or destroyed his legal documents. In her affidavit, CO Bush stated that on February 6, 2009, she was assigned to the front desk position at LRF. Bush Aff. at ¶ 3. However, at no time did plaintiff's counsel (either Mr. Reneiro or Mr. Monsma) directly hand her any paperwork of any kind. *Id.* at ¶ 4. Bush also denied

7

knowledge of plaintiff's pending litigation against an MDOC corrections officer at another facility, that she disposed of plaintiff's legal paperwork or that she ordered someone else to dispose of the paperwork. *Id.* at ¶ 6.

Although plaintiff has had an opportunity to conduct discovery in this matter, he cannot produce any evidence to support his retaliation claim against CO Bush or rebut the statements made in her affidavit. At his deposition, plaintiff testified that he had no contact with CO Bush before or after the February 6, 2009 incident. Swackhammer Dep. at pp. 30 and 33 (docket no. 50-3). Plaintiff is not even sure where CO Bush worked. *Id.* at p. 33. Plaintiff's claim is based upon the fact that CO Bush worked at the front desk at some time on February 6th, that legal papers were left at the prison for him and that "somebody" threw away those papers. *Id.* at p. 30. Plaintiff goes on to speculate that unknown persons (i.e., "they", apparently meaning prison employees)

> [S]pecifically destroyed legal materials in relation to a lawsuit I had pending against other corrections officers, motivation by being like their kinsmen [sic]. They're connected by the gray and black.

*Id.* at pp. 31-32.

Plaintiff also relies on a portion of the second page of a partially redacted letter signed by his attorney (Monsma) stating in pertinent part that:

> Finally, you indicated in your letter that you did not receive several pre-trial documents that we left for you on February 6, 2009. We do not know with whom these documents were left. However, copies of those documents are enclosed and include the Trial Brief, Proposed Jury Instructions, and Statement of the Case.

Attorney Letter (March 27, 2009) (docket no. 28-1). As an initial matter, respondents point out that the copy of the partially redacted letter is hearsay which not cannot support a motion for summary judgment. *See* Fed. R. Civ. P. 56(c) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence"). The court

agrees.  In addition, plaintiff did not provide the court with a complete copy of the letter or an affidavit authenticating it.  Furthermore, even if the court considered the letter, all that the letter establishes is that documents were left with an unknown person at the prison on February 6th.  The fact that CO Bush was working at the front desk on that date does not establish that plaintiff's counsel left the paperwork with her.  Counsel's cryptic statement does not even establish that the legal paperwork was left with a female corrections officer working at the front desk on that date.

In summary, there is no evidence to connect CO Bush with the alleged retaliatory conduct.  "Personal involvement is necessary to establish section 1983 liability."  *Murphy v. Grenier*, 406 Fed.Appx. 972, 974 (6th Cir. 2011).  "It is axiomatic that the liability of persons sued in their individual capacities under section 1983 must be gauged in terms of their own actions." *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999).  Here, plaintiff has presented nothing more than sheer speculation that his attorneys left legal paperwork with CO Bush, that although plaintiff had no prior dealings with CO Bush, she retaliated against him by destroying the paperwork because it involved her "kinsmen" (i.e., corrections officers at another MDOC facility).  Retaliation rarely can be supported with direct evidence of intent.  *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005).  However, a plaintiff claiming retaliation must present more than conclusory allegations of retaliatory motive.  *Id.*  Accordingly, CO Bush's motion for summary judgment should be granted.

**2.     CO Plichta**

Plaintiff alleged that CO Plichta retaliated against him by failing to add the names of his lawyers to his telephone contact list.  As discussed, *supra*, plaintiff alleged that Plichta failed to add Attorney Rendiero to the list until plaintiff's third request, and that Plichta never added Attorney Monsma to the list.  In his affidavit in support of the motion for summary judgment,

9

Plichta recalled speaking with plaintiff about the telephone numbers being rejected, told plaintiff that this was an oversight on his part and apologized. Plichta Aff. at ¶ 3 (docket no. 50-4). Plichta also told plaintiff that he did not realize the numbers on the list were attorneys, noting that there are approximately 1200 prisoners at the facility and he (Plichta) could not possibly know the identities of plaintiff's visitors (including his attorneys) who visited the facility. *Id.* at ¶ 4. Plichta told plaintiff to submit another request and he would process it right away. *Id.* at ¶ 6. While plaintiff alleged that other requests were not processed, Plichta stated that he is not the only person who processed the forms. *Id.* at ¶ 7.

Plichta noted that ARUS Watson signed a Telephone Agreement and Number list on February 18, 2009 and that he (Plichta) processed the same day he received it. *Id.* at ¶ 8. Plichta referenced MDOC Policy Directive 05-03-130 (Prisoner Telephone Use), which requires that all telephone lists need to be transmitted to the telephone company within one business day of receipt. *Id.* Attorney Rondeiro was placed on plaintiff's approved telephone list on March 2, 2009. *Id.* at ¶ 9. Attorney Monsma's name was not added to plaintiff's telephone list at that time, because Monsma was not listed in the 2009 version of the Michigan State Bar Journal or the Michigan State Bar website, sources used by personnel at LRF to verify telephone numbers. *Id.* at ¶ 10. Attorney Monsma's name was added to plaintiff's telephone list on March 16, 2009, although Plichta does not know who processed the list or verified the telephone number. *Id.* at ¶ 11. Plaintiff has not provided any evidence to rebut Plichta's affidavit.

Viewing the facts in the light most favorable to the non-moving party (plaintiff), the court concludes that there is no evidence to support plaintiff's retaliation claim against CO Plichta. Assuming that plaintiff's protected conduct was his pursuit of the lawsuit, the issues are whether

Plichta engaged in adverse action that would deter plaintiff from continuing to engage in the protected conduct and whether that the adverse action was taken because of plaintiff's exercise of the protected conduct. As an initial matter, plaintiff has not demonstrated alleged adverse action, i.e., that he would be deterred from continuing to prosecute his civil lawsuit. The record reflects that ARUS Watson approved plaintiff's telephone listing for Attorney Rondeiro on February 18, 2009, that the information was sent to the telephone company that same day and that Rondeiro was included on plaintiff's telephone list as of March 2, 2009. In addition, the delay in listing Attorney Monsma was due to LCF's staff's inability to confirm that Monsma was a licensed attorney. Furthermore, there is no evidence that plaintiff was unable to communicate with his attorneys through written correspondence. *See, e.g.,* Letter (docket no. 28-1); *see generally, Patterson v. Godward*, No. 2:08-cv-78, 2012 WL 652470 (W.D. Mich. Feb. 28, 2012) (the use of telephones by MDOC prisoners is a privilege). Finally, as defendants observed, plaintiff did not make the first request to add the attorney listings until February 12, 2009, one day *after* a mistrial was declared in his lawsuit due to the jury's failure to reach a unanimous verdict. *See Swackhammer v. Martin*, 4:03-cv-82 (W.D. Mich.) (docket no. 153). Under these circumstances, i.e., where a prisoner plaintiff pursues civil litigation without counsel for over five years, is appointed counsel shortly before trial, prepares for trial and pursues the matter through a jury trial, a delay in fulfilling the prisoner's post-trial request to add the trial attorneys to the prisoner's telephone list is not the type of action that would deter a person of ordinary firmness from continuing to pursue the litigation.

Even if the court assumes, for purposes of this report, that the delay in adding the attorneys to the telephone list was an adverse action, plaintiff has not established a causal connection between the adverse action and the exercise of the protected conduct. In his uncontested affidavit,

CO Plichta provided an explanation for the delay in listing the telephone numbers which was unrelated to plaintiff's exercise of the protected conduct. CO Plichta's motion for summary judgment should also be granted.

### III. Recommendation

For the reasons set forth above, I respectfully recommend that the motion for summary judgment filed by defendants Bush and Pilchta (docket no. 49) be **GRANTED**.


Dated: February 11, 2013                                /s/ Hugh W. Brenneman, Jr.
                                                        HUGH W. BRENNEMAN, JR.
                                                        United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).